UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALFRED SWENSON,<br>    Plaintiff,<br><br>          v.<br><br>WILMINGTON SAVINGS FUND SOCIETY, FSB D/B/A CHRISTIANA TRUST, NOT INDIVIDUALLY BUT AS TRUSTEE FOR PRETIUM MORTGAGE ACQUISITION TRUST, and SELENE FINANCE LP,<br>    Defendants. | C.A. No. 1:16-cv-11646 |

<u>MEMORANDUM AND ORDER</u>

WOLF, D.J.                                                September 2, 2021

      On January 4, 2021, the Magistrate Judge issued a Report and Recommendation (Docket No. 116) (the "Report") concerning plaintiff Alfred Swenson's Renewed Motion to Reopen Case (Docket No. 53). The Magistrate Judge recommends that the court allow the Motion, conclude that the parties agreed to settle this case on the terms plaintiff contends, and order the parties to execute loan documents reflecting the terms of their settlement agreement. Defendants have filed an Objection to the Report. (Docket No. 117) (the "Objection"), and plaintiff has filed a Reply to Defendants' Objection (Docket No. 118) (the "Reply"). The matters as to which defendants objected have been reviewed <u>de</u> <u>novo</u>. <u>See</u> 28 U.S.C.

§636(b)(1)(B) & (C); Fed. R. Civ. P. 72(b)(3); Díaz-Alarcón v. Flández-Marcel, 944 F.3d 303, 310 (1st Cir. 2019).

As explained in this Memorandum, the court is denying defendants' objections. The court finds that the Report is thorough, thoughtful, and persuasive. Accordingly, the court is adopting it in full and incorporating it into this Memorandum. See Exhibit A.

I. BACKGROUND

In July 2016, plaintiff commenced this action pro se in Essex County Superior Court. See Report, Findings of Fact at ¶3. It was removed to this court in August 2016. See id. In the operative Second Amended Complaint, Swenson alleged that defendants offered him a modification of the terms of his home loan on August 18, 2016. See id. at ¶5; Second Amended Complaint (Dkt. No. 30). However, plaintiff alleged that defendants then altered the agreed upon terms by increasing the principal and eliminating a provision which could have resulted in the forgiveness of a substantial amount of debt. See Report at ¶5. Based on this and other alleged misconduct, the Second Amended Complaint alleged seven counts against defendants, including breach of contract and violations of Mass. Gen. Laws. ch. 93A. See id. He sought damages and a declaratory judgment that defendants lacked jurisdiction to foreclose on his home. See id. at 2, (citing Second Amended Complaint (Docket No. 30) at ¶1). In his proposed Third Amended

2

Complaint, Swenson also disputed the total amount due under his home loan loan. See id. at ¶7.

On November 5, 2018, the parties took part in mediation before Judge Edward Harrington. See id. at ¶8. At the conclusion of that mediation, Judge Harrington reported that the case was settled. See Dkt. No. 49. On November 8, 2018, this court issued an order dismissing the case, and allowing it to be re-opened upon a motion filed within 60 days if the settlement agreement was not performed or later if a meritorious Federal Rule of Civil Procedure 60(b) motion were filed. See Dkt. No. 50.

On January 4, 2019, plaintiff moved to reopen this case, asserting that defendants had failed to perform as required by their settlement agreement. See Dkt. No. 51. The court denied plaintiff's motion without prejudice. See Dkt. No. 52. Plaintiff then filed a Renewed Motion to Reopen the case and for a status conference (the "Renewed Motion to Reopen"), with additional required documentation on January 9, 2019. See Dkt. No. 53. In a supporting affidavit, plaintiff's counsel stated that defendants had sent plaintiff a loan modification agreement with a principal balance that was approximately $81,000 more than the parties agreed to at the mediation and had failed to abide by other terms of the settlement agreement. See Affidavit of Christopher Cornetta (Dkt. No. 53-1) at ¶¶15-18.

3

The case was returned for further mediation to Judge Harrington, who reported that the parties had been unable to resolve their dispute and that plaintiff would maintain his Renewed Motion to Reopen the case and enforce the settlement. See Dkt. No. 59. On September 23, 2019, the Magistrate Judge entered an order stating that she would treat plaintiff's Renewed Motion to Reopen as a request that the court address whether a settlement agreement had been reached, and, if so, whether to enforce it. See Dkt. No. 70.

Defendants filed a Motion for Reconsideration challenging the court's jurisdiction on the ground that plaintiff's Renewed Motion to Reopen was untimely. See Dkt. No. 78 (the "Motion for Reconsideration"). On January 2, 2020, the Magistrate Judge issued a Memorandum and Order in which she concluded that defendants' jurisdictional argument was without merit and, on plaintiff's motion, awarded sanctions. See Dkt. No. 86.[1]

The Magistrate Judge held an evidentiary hearing on the Renewed Motion to Reopen on January 23, 2020. See Dkt. No. 90. At that hearing, she heard testimony from the parties and from their counsel who participated in the November 5, 2018 mediation. See id. The parties also submitted numerous exhibits, including

---

[1] Defendants appealed from the Magistrate Judge's January 2, 2020 Order. See Dkt. No. 93. The First Circuit dismissed this appeal for lack of appellate jurisdiction on September 16, 2020. See Dkt. No. 112.

4

email correspondence between their counsel and some contemporaneous mediation notes. See Dkt. No. 92.

II. FACTS

Having reviewed the Magistrate Judge's findings of fact de novo, the court adopts the relevant facts found in the Report and finds certain additional facts supported by the record. See Report, Findings of Fact at ¶¶3-83. The essential facts are summarized as follows.

On November 5, 2018, the parties appeared at the John Joseph Moakley Courthouse for mediation before Judge Harrington. See id. at ¶8. This mediation was attended by Mr. Swenson and his counsel, Christopher Cornetta, and by Selene's representative, Peter Joslyn, and counsel for defendants, Richard Demerle. See id.

The goal of the mediation was to find a solution which would enable Mr. Swenson to keep his home and to make his monthly loans payments affordable. See id. at ¶9. Defendants made multiple offers before the parties eventually agreed on terms. See id. at ¶¶10-11.

After four hours at the mediation, the parties met with Judge Harrington to review the terms that they had agreed upon. See id. at ¶8. Settlement terms which are not now in dispute include:

(1) An unpaid principal balance of $248,000;

(2) A fixed interest rate of 4.5%;

5

    (3)    A 30-year loan period amortized over a 40-year period with a balloon payment at the end of the loan period of approximately $107,000;

    (4)    Mr. Swenson would pay defendants $45,000 by December 1, 2018;

    (5)    Monthly payments at the new rate would begin in January 2019;

    (6)    Defendants would pay Mr. Swenson $9,000 in attorneys' fees within 30 days of the mediation;

    (7)    Defendants would request that the national credit bureaus delete the tradeline for the mortgage loan from Mr. Swenson's credit reports, and would provide proof that they had done so within thirty days of the date of the mediation; and

    (8)    There would be no trial plan - the agreement would be a permanent modification.

See id. at ¶15. These terms are consistent with Mr. Cornetta's contemporaneous notes from the mediation. See id. at ¶17.

At the evidentiary hearing, Mr. Demerle testified that, in addition to these terms, the parties agreed in front of Judge Harrington that there would be no debt forgiveness at the end of the 30-year loan period. See id. at ¶19. However, the Magistrate Judge did not find it credible that the parties addressed this issue before Judge Harrington. See id. at ¶20. No other witness corroborated Mr. Demerle's testimony that the parties discussed debt forgiveness while reviewing terms at the conclusion of the mediation, and Mr. Cornetta denied that defendant ever stated during the mediation that there would be no debt forgiveness. See id. at ¶¶20-21. Mr. Cornetta's contemporaneous notes also make no

6

mention of debt forgiveness or any unpaid principal balance that would be due at the end of loan period. See id. at ¶31. Like the Magistrate Judge, this court finds that Mr. Cornetta's version of events is credible and Mr. Demerle's is not.

Even under Mr. Demerle's version of events, the parties did not agree at the mediation to a total outstanding debt amount or that the amount of unpaid debt would be rolled over into a deferred payment at the end of the loan. See id. at ¶¶9, 24, 35. There was no reason why the parties could not have agreed on an estimated figure for a deferred principal payment at the mediation. See id. at ¶36.

Plaintiff has complied with his obligations under the November 5, 2018 settlement agreement. See id. at ¶41. On November 26, 2018, Mr. Cornetta sent a check from Mr. Swenson to Mr. Demerle in the amount of $45,000. See id. at ¶49. Mr. Swenson has also made monthly payments in the amount of $1,839.20. See id. at ¶¶49, 67.

However, defendants have failed to comply with several terms of the settlement agreement. See id. ¶41. They did not send drafts of the settlement agreement or the final loan documents for review within 30 days of the mediation. See id. at ¶64. Instead, on November 26, 2018, defendants emailed Mr. Cornetta a "trial modification plan" which included a "deferred/non-interest bearing principal balance" of $125,182.26. See id. at ¶64. Mr. Cornetta

7

objected that the parties agreed that there would be no trial modification plan. See id. at ¶¶46-47. Defendants did not produce any permanent loan documents until they sent Mr. Cornetta a Loan Modification Agreement on January 8, 2019. See id. at ¶73. In that Loan Modification Agreement, defendants listed an "unpaid principal balance" of $329,242.82 and a "deferred principal balance" of $81,242.82. See id. at ¶73. Mr. Cornetta promptly rejected this agreement on the ground that the balances did not match the terms of the settlement agreement. See id. at ¶74. Mr. In subsequent communications, Mr. Demerle maintained that the parties had agreed that there would be no debt forgiveness and that the Loan Modification Agreement was therefore correct. See id. at ¶¶78-82. Defendants also have still not paid Mr. Swenson the $9,000 in attorneys' fees that was due on December 5, 2018. See id. at ¶¶50, 55-60.

III. DISCUSSION

The Magistrate Judge found that the parties discussed and entered into an enforceable settlement agreement which included an unpaid principal balance of $248,000, a balloon payment consisting of the remaining interest, and no additional deferred principal payment. See Report, Rulings of Law at ¶¶8, 13-14. Mr. Demerle and Mr. Joslyn may have assumed Mr. Swenson would make a deferred principal payment, but the parties never discussed one during the mediation. See id. at ¶14. Mr. Cornetta's conduct after the

8

mediation did not indicate that he understood that the settlement included a deferred principal payment. Although he could have objected to the deferred principal balance included in the trial modification plan he received on November 26, 2018, Mr. Cornetta rejected that trial modification plan in its entirety. See id. at ¶¶19.

Defendants now object to the Magistrate Judge's finding that a settlement agreement was reached which did not include any deferred principal payment and to how the Magistrate Judge reached that ruling. For the reasons described below, the court concludes that these objections are not meritorious.

As a threshold issue, defendants object that the court lacks subject matter jurisdiction to grant plaintiff' Renewed Motion to Reopen. See Objection (Dkt. No. 117) at 10. They contend that plaintiff did not properly move to reopen this case within the 60-day period ordered by the court. See id. at 10-11; see also November 8, 2018 Order (Dkt. No. 50). Consequently, the court now lacks jurisdiction to reopen the case, enforce the agreement, or grant other relief. See id. at 11 (citing Lipman v. Dye, 294 F.3d 17, 19 (1st Cir. 2002)).

Plaintiff initially filed a Motion to Reopen this case on January 4, 2019 - within the 60-day period established by the November 8, 2018 Order. See Motion to Reopen (Dkt. No. 51). On January 7, 2019, the last day of that 60-day period, the court

9

denied plaintiff's Motion without prejudice because plaintiff had failed to support his Motion with the affidavit and memorandum required by Rule 7.1(b)(1) of the Local Rules of the United States District Court for the District of Massachusetts, and did not specify how defendants were not complying with the terms of the settlement agreement. See January 7, 2019 Order (Dkt. No. 52). The same day, and still within the 60-day period, Mr. Demerle emailed Mr. Cornetta, stating in part:

> I just saw this [(i.e., January 7, 2019 Order)] come down from US DC (MA). If I might make a suggestion, hold off on filing the revised motion. I expect my client to tell me shortly when the agreement for judgment and permanent modification offer will be ready to forward to you to finalize this matter.

Jan. 7, 2019 Correspondence (Dkt. No. 79-1). Accordingly, plaintiff "h[e]ld off" filing his Renewed Motion to Reopen until January 9, 2019. See Dkt. No. 53. Defendants did not initially oppose the Renewed Motion to Reopen as untimely or on any other ground. It was not until they filed their Motion for Reconsideration some 11 months later that defendants argued, for the first time, that plaintiff's failure to reopen the case within 60 days of the November 8, 2018 Order of dismissal deprived this court of subject matter jurisdiction. See Dkt. No. 78.

Defendants are now equitably estopped from objecting to the Report on the ground that plaintiff failed to timely file his Renewed Motion to Reopen. "Equitable estoppel seeks to prevent a

10

person from denying the natural consequences of his words or actions where that conduct induces another to change his position." Micro Networks Corp. v. HIG Hightec, Inc., 195 F. Supp. 2d 255, 266 (D. Mass. 2001). Courts apply this doctrine to bar a party from advancing arguments and defenses when that party has induced another party to delay pursuing a legal remedy. See, e.g. Bergeron v. Mansour, 152 F.2d 27, 29-30 (1st Cir. 1945) (equitable estoppel applied where plaintiff reasonably relied on the representations and conduct of the defendant and allowed the statute of limitations to run before commencing her action); Springfield Libr. & Museum Ass'n, Inc. v. Knoedler Archivum, Inc., 341 F. Supp. 2d 32, 41 (D. Mass. 2004) (accord). Here, defendants convinced plaintiff not to file the Renewed Motion to Reopen within the 60-day period, and plaintiff reasonably relied on defendants' suggestion when delaying his filing.

In any event, there is good cause under Federal Rule of Civil Procedure 60(b) ("Rule 60(b)") to relieve plaintiff from the November 8, 2018 Order of dismissal and to reopen this case. "'Rule 60(b) grants federal courts the power to vacate judgments whenever such action is appropriate to accomplish justice.'" Roosevelt REO PR II Corp. v. Del Llano-Jimenez, 765 F. App'x 459, 461 (1st Cir. 2019) (quoting Bouret-Echevarría v. Caribbean Aviation Maint. Corp., 784 F.3d 37, 41 (1st Cir. 2015)). Among the reasons Rule 60(b) recites justifying relief are "mistake,

11

inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b). "As a general matter, Rule 60(b) motions should not be granted unless the party seeking relief can show (1) that the motion was timely, (2) that exceptional circumstances justifying relief exist, (3) that the other party would not be unfairly prejudiced, and (4) that there is a potentially meritorious claim or defense." Roosevelt REO PR II Corp., 765 F. App'x at 461.

Plaintiff's failure to timely file his Renewed Motion to Reopen was excusable neglect. He filed that Motion only two days after the expiration of the 60-day deadline set by the November 8, 2018 Order.[2] See, e.g., Queens Syndicate Co. v. Herman, 691 F. Supp. 2d 283, 288-89 (D. Mass. 2010), aff'd sub nom. Quincy V, LLC v. Herman, 652 F.3d 116 (1st Cir. 2011) (finding excusable neglect where "[p]laintiffs did not move to enforce the settlement Agreement until a few days after the sixty-day period had expired"); Pratt v. Philbrook, 109 F.3d 18, 22 (1st Cir. 1997) (vacating denial of 60(b) motion and remanding case for trial court to consider whether three-week late motion to reopen settled case

---

[2] The relative timeliness of plaintiff's Renewed Motion to Reopen distinguishes this case from Lipman v. Dye, 294 F.3d 17 (1st Cir. 2002), on which defendants rely. In Lipman, the plaintiff moved to reopen a settled case 16 months after it had been dismissed and 8 months after the trial court denied his first motion to reopen. See Lipman, 294 F.3d at 20-21. By that point, as the First Circuit stated, "the case in question had, for some time, been terminated." Id.

should be allowed due to excusable neglect). The parties were still negotiating at that time, and defendants encouraged plaintiff to keep negotiating rather than timely move to reopen the case. It is not unfair to defendants to reopen the case. Furthermore, plaintiff has made a meritorious argument for enforcing the settlement agreement on the terms he alleges. The court is, therefore, vacating the November 8, 2018 Order of dismissal and is exercising subject matter jurisdiction over his Renewed Motion to Reopen.

With respect to the merits, defendants object that the Magistrate Judge erroneously applied a subjective interpretation to the evidence presented at the evidentiary hearing. See Objection at 7. As examples, they assert that the Magistrate Judge erred by finding that Mr. Cornetta would have referenced debt forgiveness in his notes from the mediation if the parties had discussed it and that Mr. Swenson would not have agreed to a settlement with no forgiveness of debt because he had claims challenging the amounts he owed. See id. at 9. Therefore, defendants argue, the Magistrate Judge improperly considered what was in Mr. Swenson and Mr. Cornetta's minds at the mediation, their subjective intent, rather than focus solely on their outward manifestations of intent. See id. at 9-10.

"The formation of a valid contract under Massachusetts law requires objective, not subjective, intent." Greene v. Ablon, 794

13

F.3d 133, 147 (1st Cir. 2015). Objective intent is "deemed to be what a reasonable man in the position of the other party would conclude his objective manifestations to mean," and "may be inferred from conduct." id. As one prominent treatise explains:

> Under this "reasonable person" standard, the law accords to individuals an intention that corresponds with the reasonable meaning of their words and conduct, and if their words and conduct manifest an intention to enter into a contract, their real but unexpressed intention is irrelevant. The courts' inquiry, therefore, is not into the parties' actual, subjective intention, but rather into how the parties manifested their intention; not on whether there has been a subjective "meeting of the minds," but rather on whether the parties' outward expression of assent is sufficient to show an apparent intention to enter into a contract.

1 Williston on Contracts, §3:5 Intent to Contract (4th ed. 2021) (Williston). "Determining that intention involves considering the credibility of witnesses, weighing competing, plausible inferences that can be drawn from events and documents, separating the significant testimony and documentary evidence from the insignificant, and other 'factual' inquiries." Salem Laundry Co. v. New England Teamsters & Trucking Indus. Pension Fund, 829 F.2d 278, 280 (1st Cir. 1987).

Applying a "subjective interpretation of the evidence presented," is not equivalent to erroneously considering the subjective intent of the parties to a contract. Objection at 9. The parties' testimony concerning what was said and done, and how the parties say they understood the contract, may be evidence of

14

how a reasonable person would interpret their conduct. See, e.g., Greene, 794 F.3d at 147. By making findings of fact based on conflicting evidence, the Magistrate Judge was properly "weighing competing, plausible inferences that can be drawn from events and documents." See Salem Laundry Co., 829 F.2d at 280. The fact that defendants disagree with the inferences the Magistrate Judge drew does not mean that the Magistrate Judge erred.

To the contrary, the Magistrate Judge did not improperly consider any undisclosed subjective intent of the parties in finding that the parties reached an enforceable agreement that did not include any deferred principal payment. Instead, the Magistrate Judge correctly considered the totality of the circumstances surrounding the mediation to determine how a reasonable person in the parties' positions would interpret each other's objective manifestations of intent. For example, it was appropriate for the Magistrate Judge to consider Mr. Swenson's prior efforts to contest the total principal balance he owed when assessing whether it was reasonable for defendants to conclude that he had agreed to an undefined deferred payment in the future. See Williston, at §3:5 ("a court must consider the totality of the circumstances surrounding the parties at the time they manifest an intention to contract . . .including the situation of the parties, both individually and relative to one another, and the objectives they sought to attain"). Similarly, the Magistrate Judge could

15

properly consider Mr. Cornetta's contemporaneous notes when assessing the credibility of Mr. Demerle's conflicting testimony that the parties agreed that there would be no debt forgiveness. See Salem Laundry Co., 829 F.2d at 280. The court discerns no error in the Magistrate Judge's assessment of the objective intent of the parties and agrees with it.

More generally, defendants object to the Magistrate Judge's recommendation that the court order the parties to execute a loan modification agreement with no deferred principal balance and an Unpaid Principal Balance of $248,000. See Objection at 6. They maintain that they never agreed to forgive any of plaintiff's outstanding debt. See Objection at 6. Defendants argue that the evidentiary record instead reflects that the parties discussed at the mediation that there would be no debt forgiveness as part of the settlement. See id. at 7. There was, therefore, no mutual assent to the terms asserted by plaintiff and recommended by the Magistrate Judge. See id. at 8.

"In this diversity case, we apply Massachusetts contract law" to determine whether the parties reached an enforceable settlement agreement. Fid. & Guar. Ins. Co. v. Star Equip. Corp., 541 F.3d 1, 5 (1st Cir. 2008). As the Magistrate Judge stated, "'[i]t is axiomatic that to create an enforceable contract, there must be agreement between the parties on the material terms of that contract, and the parties must have a present intention to be bound

16

by that agreement.'" Report, Rulings of Law at ¶4 (quoting Situation Mgmt. Sys., Inc. v. Malouf, Inc., 430 Mass. 875, 878, 724 N.E.2d 699, 703 (2000)). "'[I]n Massachusetts an enforceable settlement agreement arises when all of the parties to be bound mutually assent to all material terms, even if those terms are not memorialized in a final writing.'" See id. at ¶6. (quoting Hansen v. Rhode Island's Only 24 Hour Truck & Auto Plaza, Inc., 962 F. Supp. 2d 311, 314 (D. Mass. 2013). It is the parties' objective manifestations of intent to be bound that control, not their undisclosed intentions. See, e.g., Greene, 794 F.3d at 147.

The court agrees with the Magistrate Judge's conclusion that the parties reached an enforceable settlement agreement on November 5, 2018.³ At the conclusion of the four-hour mediation, the parties met with Judge Harrington to report the terms of the settlement. See Report, Findings of Fact at ¶8. Neither party objected to these terms at that time. See id. at ¶14; see also Tr. of Jan. 3, 2020 Evid. Hearing (Dkt. No. 108) at 11:2-23, 85:13-86:1, 101:3-103:18. Defendants acknowledge that, with Judge Harrington's assistance, the parties reached "an agreement in

---

³ The Magistrate Judge stated that "[i]n the instant case, both parties agree that they entered into an enforceable settlement agreement." Report, Rulings of Law at ¶8. However, defendants now argue that "the evidentiary record does not support the Court's finding that - despite contradictory testimony as well as agreement between the parties that certain settlement terms were incomplete - the parties had a meeting of the minds sufficient to reach a settlement agreement." Objection (Dkt. No. 117) at 6-7.

principle to settle." See Objection at 3. That same day, Judge Harrington reported that the case was settled. See Dkt. No. 49. Although some details of the agreement remained to be defined, both parties manifested mutual assent to the material terms of the agreement.

The court also concurs with the Magistrate Judge's finding that, as part of that agreement, the parties did not agree that there would be no debt forgiveness and plaintiff would be required to pay an undefined deferred principal payment at the end of the modified home loan's 30-year period. For essentially the same reasons as the Magistrate Judge, the court concludes that the parties did not mutually assent to defendants' alleged additional terms. The court too credits the testimony of Mr. Cornetta, corroborated by his contemporaneous notes, that the parties did not tell Judge Harrington that there would be any debt forgiveness as part of the settlement. See Tr. of Jan 3, 2020 Evid. Hearing (Dkt. No. 108) at 47:22-48:1. It would not have been reasonable for defendants to assume that plaintiff would agree to pay some undefined deferred principal payment in the future, particularly after he had been litigating the amount of principal he owed. Based on defendants' conduct at the mediation, it was reasonable for plaintiff to assume that no such payment would be due. Therefore, a reasonable person in the parties' positions, interpreting each other's words and actions, would understand that

18

the terms of their settlement did not include an additional undefined deferred principal payment. As explained earlier, the parties' objectively manifested mutual assent to a settlement without a deferred principal payment is what defines the terms of their agreement, not any subjective and unexpressed intent that might have existed in defendants' minds. See, e.g., Greene, 794 F.3d at 147; Williston at §3:5.[4]

In view of the foregoing, the court agrees with the Magistrate Judge that, on November 5, 2018, the parties reached an enforceable settlement agreement that did not require plaintiff to make a deferred principal payment at the end of his home loan's 30-year period. In view the of defendants' failure to comply with the settlement agreement, the court is exercising its "authority to insure due compliance with such a pact," and, "to enforce it." Mathewson Corp. v. Allied Marine Indus., Inc., 827 F.2d 850, 852 (1st Cir. 1987).

Accordingly, it is hereby ORDERED that:

1.   The attached Report and Recommendation (Dkt. No. 116) is ADOPTED and INCORPORATED pursuant to 28 U.S.C. §636(b)(1)(C).

---

[4] The court does not suggest that it finds or believes that defendants' representative and counsel had any unexpressed intent when the settlement was described to Judge Harrington. Rather, it is more likely that defendants sought to alter the terms of the settlement agreement consented to at the mediation by their representative and counsel.

2. Plaintiff's Renewed Motion to Reopen (Dkt. No. 53) is ALLOWED.

3. The Parties shall, by September 30, 2021 execute settlement documents substantially in the form of the January 8, 2019 Loan Modification Agreement provided by defendants, modified to eliminate the "deferred principal balance" and to limit the "Unpaid Principal Balance" to $248,000.

4. Defendants shall, by September 30, 2021 pay to Mr. Swenson or Mr. Cornetta $9,000 in attorneys' fees, and provide Mr. Swenson proof that they requested the agreed-upon corrections to Mr. Swenson's credit reports.

_____
UNITED STATES DISTRICT JUDGE